In re Robert DONAHUE, Sr., Debtor.

Michael J. Tatko, Jr., Appellant,

v.

Robert Donahue, Sr., Appellee.

Vermont Bankers Association, Movant.

Vermont Mortgage Bankers Association, Movant.

No. 98–CV–256.

United States District Court, D. Vermont.

April 8, 1999.

Richard W. Kozlowski, Lisman & Lisman, Burlington, VT, for Michael J. Tatko, Jr., creditor appellant.

Rebecca A. Rice, Law Offices of Norman Cohen, Rutland, VT, for Robert Donahue, Sr., debtor appellee.

Frederick Sheldon Prentice, Burlington, VT, for Vermont Bankers Association, movant.

David T. Olenick, Waitsfield, VT, for Vermont Mortgage Bankers Association, movant.

Kevin Jay Purcell, Office of the U.S. Trustee, Albany, NY, for United States Trustee.

Jan M. Sensenich, White River Jct., VT, trustee pro se.

## OPINION AND ORDER

SESSIONS, District Judge.

This is an appeal from a decision of the Bankruptcy Court Judge confirming the debtor Donahue's Chapter 13 Plan of Reorganization and denying in part the creditor Tatko's Motion for Relief from the automatic stay provision of the Bankruptcy Code. 11 U.S.C. § 362. *See In re Donahue*, 221 B.R. 105 (Bankr.Vt.1998). Tatko has appealed the following issues: (I) whether Donahue had an interest in the secured property; (ii) whether a portion of the secured property is Donahue's principal residence; and (iii) whether Tatko should have been granted relief from the Bankruptcy Code's automatic stay provision with respect to all portions of the secured property. In addition, Tatko has appealed the Bankruptcy Court's confirmation of a Plan of Reorganization that:

(I) bifurcates Tatko's security interest;[1] (ii) returns only a portion of the secured property to Tatko, allowing Donahue to retain the remaining portion as his principal residence (an "eat dirt" plan);[2] (iii) allows Donahue to repay Tatko for the retained portion over a five year period; and (iv) allows repayment without evidence of Donahue's ability to make the scheduled payments.

For the reasons discussed below, we reverse the Bankruptcy Court's decision so that execution of Tatko's foreclosure judgment in Rutland Superior Court may resume in accordance with Vermont's strict foreclosure statute. 12 V.S.A. §§ 4528 *et seq.*

## I. *Factual Background*

On July 11, 1990, the debtor Donahue purchased fifty acres of unimproved land in the Town of Wells from the creditor Tatko, executing a promissory note in the amount of $39,150.00 to be repaid over three years at an interest rate of 12%. As security, Donahue executed a mortgage on the property in favor of Tatko.

Subsequent to the purchase, Donahue informally subdivided the property into five ten-acre lots[3] and moved a mobile home onto one of those lots. Access to that lot is via a gravel and slate driveway. There is overhead and underground telephone service but no electric service to the mobile home site. A well with a hand pump is located in front of the mobile home, but is not a source of potable water. A concrete pad intended to serve as a garage floor is located on the lot and the adjoining lot.

Donahue made only four payments to Tatko under the note and mortgage. On March 15, 1995, Tatko commenced a foreclosure action in Rutland Superior Court under Vermont's strict foreclosure statute. Before a hearing was scheduled, on August 6, 1996, Donahue filed his first Chapter 13 petition for bankruptcy.[4] In November 1996, with the Bankruptcy Court's approval, Donahue sold one of the five ten-acre parcels and paid the net sales proceeds to Tatko in partial satisfaction of the debt.

Tatko moved for relief from the automatic stay provision of the Bankruptcy Code, so that the foreclosure action in Rutland Superior Court could resume. Donahue initially objected to the Bankruptcy Court's granting relief but then withdrew his objection, choosing instead to convert the case to a Chapter 7 proceeding. On May 13, 1997, the Bankruptcy Court granted Tatko motion for relief from the stay. On June 20, 1997, the Superior Court granted Tatko's motion for summary judgment, fixed the debt owed Tatko at $69,923.63 (plus accruing interest) and agreed to shorten the statutory redemption period to sixty days.

Donahue's redemption period expired on January 5, 1998. The redemption periods of three junior lienholders expired on January 6, 7 and 8, respectively. Donahue filed a second Chapter 13 petition for bankruptcy on January 8, the expiration date designated for the last of the junior lienholders. As of that date, no junior lienholder had filed a cross-complaint nor attempted to redeem the outstanding debt on the property.

The debt owed Tatko on the secured property was the only debt listed in Donahue's second Chapter 13 petition. Although Donahue's personal liability on the debt had been discharged in the Chapter 7 proceeding, Tatko still possessed a foreclosure judgment entitling him to return of the property after completion of the strict

---

1. The Vermont Bankers Association and the Vermont Mortgage Bankers Association have filed a brief of amici curiae with respect to this issue.

2. *Id.*

3. This subdivision was never filed with the Clerk of the Town of Wells.

4. Bankruptcy Court Judge Marro presided over this earlier Chapter 13 proceeding.

foreclosure process mandated by 12 V.S.A. §§ 4528 *et seq.*

Since Donahue could not afford to repay the entire amount of the debt still outstanding on the property, he proposed to retain only a portion—the ten-acre lot on which his mobile home is located—and to return the remaining three ten-acre lots to Tatko. Donahue proposed to repay Tatko for the lot which he retained over a five year period. Tatko requested that the Bankruptcy Court vacate the automatic stay so that he could proceed with foreclosing on the entire parcel.

The Bankruptcy Court held a hearing on Tatko's petition on March 19, 1998. At the hearing, the Court considered oral argument on the issues presented but did not take any direct testimony. In a decision dated May 27, 1998, the Bankruptcy Court approved Donahue's proposed plan to retain one ten-acre parcel, finding that parcel to be Donahue's principal residence and therefore necessary for an effective reorganization. The Bankruptcy Court further found that cause existed to allow Donahue to repay Tatko over a five year period. The Bankruptcy Court granted Tatko's motion for relief from the automatic stay, but only with respect to three ten-acre lots and not with respect to the entire property. If the parties could not agree upon the fair value of the ten-acre lot that Donahue would retain, the Court would schedule a valuation hearing to resolve the issue. *In re Donahue,* 221 B.R. 105 (Bankr.D.Vt.1998).

## II. *Discussion*

### A. *Jurisdiction*

■ This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a)(1) which gives the Federal District Courts jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in "core proceedings" (cases and proceedings involving purely bankruptcy matters).

Appellee Donahue contends that the Bankruptcy Court's decision was not a final order within the meaning of 28 U.S.C. § 158(a)(1) since the fair value of the ten-acre lot to be retained by Donahue has not yet been established.

■ The standard for determining whether an order is final is more flexible in the context of bankruptcy proceedings than in other civil proceedings. *In re Pegasus Agency, Inc.,* 101 F.3d 882, 885 (2d Cir.1996). "... [B]ankruptcy proceedings often continue for long periods of time and discrete claims are resolved from time to time over the course of the bankruptcy proceedings." *Id.* (citing *In re Prudential Lines, Inc.,* 59 F.3d 327, 331 (2d Cir.1995)).

■ A Bankruptcy Court's denial of relief from the Bankruptcy Code's automatic stay provision is "the equivalent of a permanent injunction" and should be treated as a final order. *In re Taddeo,* 685 F.2d 24, 26, n. 4 (2d Cir.1982). Similarly, an order lifting the automatic stay is final and appealable. *In re Pegasus Agency, Inc.,* 101 F.3d 882, 885 (2d Cir.1996) (citing *In re Chateaugay Corp.,* 880 F.2d 1509, 1511 (2d Cir.1989)).

### B. *Standard of Appellate Review*

■ A bankruptcy judge's findings of fact may not be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013. *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1388 (2d Cir.1990); *In re Cassani,* 214 B.R. 459, 462 (D.Vt.1997). Questions of law are reviewed *de novo. U.S. Rural Housing and Community Development Service (RECDS) v. Loper,* 222 B.R. 431, 434 (D.Vt.1998) (citing *In re Manville Forest,* 896 F.2d at 1388).

■ A bankruptcy judge's decision to deny or grant a motion to lift an automatic stay is considered discretionary. *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1286 (2d Cir.1990). "In this context, '[a]n abuse of discretion may take the form of the application of erroneous legal principles or procedures, [or] findings of fact

which are clearly erroneous,'" *Contemporary Mortgage Bankers, Inc. v. High Peaks Base Camp, Inc.*, 156 B.R. 890, 893 (N.D.N.Y.1993) (quoting *In re Chateaugay Corp.*, 109 B.R. 613, 619 (S.D.N.Y.1990), appeal dismissed without prejudice and remanded on other grounds, 924 F.2d 480 (2d Cir.1991)).

### C. *Whether Donahue retained an interest in the secured property at the time that he filed his second Chapter 13 bankruptcy petition*

■■■ "Congress 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" *Nobelman v. American Savings Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 2110 124 L.Ed.2d 228, 235 (1993) (quoting *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

In the instant case, Vermont's strict foreclosure provisions govern. 12 V.S.A. §§ 4528 *et seq.* These provisions allow a foreclosing lienholder to acquire marketable legal title to the property without conducting a foreclosure sale. *See Dieffenbach v. Attorney General of Vermont*, 604 F.2d 187 (2d Cir.1979) (upholding the constitutionality of the statute).

After obtaining a foreclosure judgment, a foreclosing lienholder must give the debtor an opportunity to redeem the property for six months from the date of the judgment unless the court orders a shorter redemption period. 12 V.S.A. § 4528. The foreclosing lienholder must also give all other lienholders an opportunity to redeem or file cross-complaints for foreclosure.[5]

If the property is not redeemed, the clerk of the court may issue a writ of possession to the foreclosing lienholder that has "the same force and effect as a writ of possession issued after judgment in ejectment proceedings." 12 V.S.A. § 4528. Within thirty days after the expiration of the redemption period, the foreclosing lienholder must record a certified copy of the judgment with the clerk of the town where the property is located. 12 V.S.A. § 4529. Unless the judgment is properly recorded, the land is still subject to redemption "by subsequent purchasers, mortgagees or attaching creditors ..." 12 V.S.A. § 4530.

In the instant case, Donahue filed his Chapter 13 petition after his own redemption period had expired, but before the expiration of the last of the redemption periods designated for the junior lienholders. The Bankruptcy Court found that under Vermont law, Donahue retained title to the property when he filed his bankruptcy petition, because Tatko had not yet recorded his foreclosure judgment. *In re Donahue*, 221 B.R. 105, 109 (Bankr.D.Vt. 1998).

This Court also finds that Donahue retained title to the property when he filed his bankruptcy petition, but because the clerk of the Rutland Superior Court had not yet issued a writ of possession. Although Donahue's redemption period had expired before he filed his bankruptcy petition, the last of the redemption periods designated for the junior lienholders had not yet expired. Tatko could not request

---

**5.** When a foreclosure action is filed, all other lienholders are joined as defendants in the foreclosure proceeding. A person acquiring a lien on the property after the foreclosure action was filed is deemed to have notice of the pendency of the action by the filing of the complaint in the town clerk's office of the town where the mortgaged property is located. 12 V.S.A. § 4523. *See Galesi v. United States*, 406 F.Supp. 623, 624 (D.Vt.1976). To redeem, a junior lienholder has to satisfy the claims of all other lienholders. Then that

lienholder becomes the debtor's only secured creditor and has to initiate its own foreclosure proceeding to acquire marketable title to the property. On the other hand, if a junior lienholder cross-claims, then the debtor must satisfy the claim of the junior lienholder as well as the claim of the foreclosing lienholder during his redemption period to retain title to the property. *In re Driscoll*, 223 B.R. 665, 668 (Bankr.D.Vt.1998).

issuance of a writ of possession until all of the designated redemption periods had expired.

Under the strict foreclosure statute, the writ of possession has "the same force and effect as a writ of possession issued after judgment in ejectment proceedings." 12 V.S.A. § 4528. Ejectment proceedings are not completed until after the clerk of the court has issued a writ of possession. "... [T]o give relief, the court's judgment must be followed by a writ of possession." *Tucker v. Bushway,* 689 A.2d 426, 427, 166 Vt. 592 (1996) (Tenants who had tendered their rent in arrears after judgment, but before a writ of possession was issued, were entitled to have their eviction action discontinued); *Town of Corinth v. Locke et al.,* 20 A. 809, 11 L.R.A. 207, 62 Vt. 411 (1890) ("The writ of possession issued to the orator and served by the officer in law put the legal possession of the premises in the orator."). *See also Couture v. Burlington Housing Authority,* 225 B.R. 58, 62 (D.Vt.1998) (Chapter 7 debtors retained a possessory interest in their apartment until execution of the writ of possession).

D. *Whether the portion of the property that Donahue proposed to retain could be considered his principal residence*

The Bankruptcy Court found that the ten-acre lot where Donahue's mobile home was located was his principal residence and therefore necessary to an effective reorganization. *In re Donahue,* 221 B.R. 105, 111 (Bankr.D.Vt.1998). Judge Conrad's findings of fact that the ten-acre parcel was Donahue's primary residence may not be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013.

This Court concludes that Judge Conrad's finding concerning Donahue's primary residence cannot be supported by the record on appeal. No evidence was introduced at the hearing regarding the primary residence issue. Rather, Judge Conrad relied upon arguments of counsel. On several occasions during the course of the hearing held on March 19, 1998, Donahue's attorney admitted that Donahue was living at his brother's house—that he *wanted* to make the property his principal residence. *See* Record on Appeal ("RA"), Transcript of March 19, 1998 Hearing. [Donahue's attorney: "The Debtor has been trying to move back in." RA, at 000151. "He wants to be living there." RA, at 000152. "He lives in his brother's house." RA, at 000160. Conversely, Donahue listed the property as his primary address and claimed he lived in the mobile home for a significant portion of the year.

It is unclear to the Court whether Donahue's mobile home constituted his primary residence. On remand, a full evidentiary hearing should be conducted to address this issue.

III. *Conclusion*

The Decision Confirming Chapter 13 Plan and Denying Relief from Automatic Stay that was entered by the Bankruptcy Court on May 27, 1998 is reversed. This Court finds that the Bankruptcy Court's confirmation of the Appellee's Chapter 13 Plan of Reorganization and denial of the Appellant's Motion for Relief from Automatic Stay was predicated on a clearly erroneous factual finding. The Bankruptcy Court erred in finding that a portion of the secured property was the principal residence of the Appellee. The case is remanded to the Bankruptcy Court for further hearings consistent with the Court's Opinion and Order.